Tagged
ORDERED in the Southern District of Florida on ___10/02/09___.





Raymond B. Ray, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov
Broward Division

In re:                                                              Case No. 09-16898-BKC-RBR

BARBARA ANITA ARCHER and                        Chapter 7
WILBERT ARCHER,

    Debtors.
_____/

### ORDER SUSTAINING OBJECTION TO EXEMPTIONS

THIS MATTER came before the Court for hearing on July 16, 2009, upon the Objection to Debtors' Claimed Exemptions and Motion for Turnover of Property (the "Objection") [D.E. 25], filed by Trustee Soneet Kapila (the "Trustee"). The Court has heard from counsel, reviewed the contents of the case file and is otherwise duly informed. For the reasons stated below, the Court will sustain the Objection.

<u>Background and Procedural History</u>

The facts of this case are not in dispute. Barbara Anita Archer and Wilbert Archer (the "Debtors") filed a joint, voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 15, 2009 [D.E. 1]. The Debtors own and reside in certain real property in Lauderdale Lakes, Florida (the "Property"). The Debtors' schedules value the Property at $63,500.00 and list one mortgage against the Property in the amount of $97,970.00 (the "Mortgage"). The Debtors did not list the Property as exempt and declared that they wished to reaffirm the Mortgage in their statement of

intention.

The Debtors listed personal property exemptions totaling $12,917.34 on Schedule C. Of these exemptions, the Debtors claimed a 2003 Toyota Corolla (the "Vehicle") as exempt pursuant to Fla. Stat. § 222.25(4). The statute provides that a debtor may exempt up to $4,000 in personal property "if the debtor does not claim or receive the benefits of a homestead exemption under s.4, Art. X of the State Constitution."

The Trustee filed the Objection on June 19, 2009. The Objection argues that the Debtors are unable to claim the personal property exemption found in Fla. Stat. § 222.25(4) (the "Wild Card Exemption") and requests the turnover of the Vehicle. After the hearing on the Objection, counsel for both parties submitted memoranda of law on the issue of whether the Debtors can properly claim the Wild Card Exemption [D.E. 36 and D.E. 37].

## Analysis

The issue before the Court is the meaning of the phrase "receive the benefits of a homestead exemption" in Fla. Stat. § 222.25(4). The Trustee argues that the Debtors are receiving the benefits of a homestead exemption by continuing to possess the Property. The Debtors note that, because they did not exempt the Property on Schedule C, the Property is part of the bankruptcy estate and is subject to administration by the trustee. Accordingly, the Debtors contend they are not receiving the benefits of a homestead exemption.

The Florida Constitution imposes homestead status upon property that meets certain constitutional requirements. *In re Magelitz*, 386 B.R. 879, 883 (Bankr. N.D. Fla. 2008) (citations omitted). Once it is acquired, homestead status is retained until the property is abandoned[1] or properly alienated. *Id.* The failure of a debtor to claim his home as exempt on Schedule C is not

---

[1] In order for a debtor to abandon real property, the debtor must state an intention to abandon the property and further intend not to return to the property. *In re Beebe*, 224 B.R. 817, 820 (Bankr. N.D. Fla. 1998).

an act of abandonment or alienation that would alter the property's homestead status under state law. See In re Magelitz, 386 B.R. at 883. Accordingly, this Court has held that, absent proper abandonment of the homestead, a debtor receives the benefits of a homestead exemption and is ineligible for the Wild Card Exemption. In re Morales, 381 B.R. 917, 921 (Bankr. S.D. Fla. 2008). Multiple sister courts have reached a similar conclusion. See, e.g., In re Oliver, 395 B.R. 792, 793 (Bankr. S.D. Fla. 2008) ("Since the Debtor plans to reaffirm the debt on her homestead property, as a matter of law, the Debtor is receiving the benefits from her homestead property and is not entitled to the [Wild Card Exemption]."); Magelitz, 386 B.R. at 883; In re Franzese, 383 B.R. 197, 206 (Bankr. M.D. Fla. 2008) ("[A] homeowner may not use the [Wild Card Exemption] if they either affirmatively 'claim' the constitutional homestead exemption or could claim the benefit on the petition date.") (emphasis in original).

The Debtors argue that the Court should interpret the phrase "receive the benefits of a homestead exemption" more narrowly so that the only benefit that renders a debtor ineligible for the Wild Card Exemption is the constitutional protection from the forced sale of a homestead property by creditors. Under such an interpretation, mere possession of a homestead will not preclude a debtor from claiming the Wild Card Exemption. See In re Abbot, 2009 Bankr. LEXIS 1822 at *12-13 (Bankr. S.D. Fla. 2009). Several courts have in fact adapted this view. See, e.g., In re Abbot, 2009 Bankr. LEXIS at *8; In re Bennett, 395 B.R. 781, 789 (Bankr. M.D. Fla. 2008); In re Hernandez, 2008 Bankr. LEXIS 1123 at *3 (Bankr. S.D. Fla. 2008).

However, the Court agrees with the Franzese opinion, which found that the definition of "benefit" includes a "right, privilege, or interest in some advantage to which a debtor is entitled to receive, regardless of whether the debtor actually has realized the advantage." 383 B.R. at 205-06 (emphasis supplied). In the context of Fla. Stat. § 222.25(4), the phrase "receive the benefits of" thus refers to the legal right or advantage the Florida Constitution confers upon a homestead

owner, regardless of whether the owner actually relies on the privilege. *In re Franzese*, 383 B.R. at 206. The Debtors' argument that one only receives the benefits of a homestead exemption if they resist creditors' execution efforts or a trustee's efforts to administer the property is misplaced. Simply having the right to resist such efforts in the event of their occurrence constitutes receiving the benefit of a homestead exemption. *See In re Franzese*, 383 B.R. at 205-06.

Moreover, the Court is not persuaded by the Debtors' argument that exposing the Property to administration and a potential sale by the Trustee equates to not receiving the benefits of a homestead exemption. When there is no equity in a home that a trustee may realize for the estate, as is the case here, the trustee will likely abandon the home to the debtors. *See In re Brown*, 406 B.R. 568, 570 (Bankr. M.D. Fla. 2009). In the interim, the debtors "will continue living in their home and will continue to receive the benefit of having their home shielded from future forced sale by creditors whose claims arose after the petition date." *In re Brown*, 406 B.R. at 570. Thus:

> Unless the facts in a particular case indicate more—that the trustee is likely to administer and sell the home, or that foreclosure or surrender of the home to the mortgages is likely—the mere act of exposing an over-encumbered home to the trustee is a temporary and meaningless event.

*In re Brown*, 406 B.R. at 571.

In the present case, the value of the Mortgage exceeds that of the Property. The Trustee will likely abandon the Property to the Debtors. In the interim, the Debtors will have remained in the Property without having abandoned it. No action has therefore taken place under Florida law that would constitute abandonment of the homestead. The Debtors are receiving the benefits of a homestead exemption and are ineligible for the Wild Card Exemption. *See In re Morales*, 381 B.R. at 921.

In light of the foregoing, it is

**ORDERED** that the Objection [D.E. 25] is **SUSTAINED**.

###

The Clerk of Court shall provide copies to:

Robert Reynolds, Esq.

*Attorney Reynolds is directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service in conjunction therewith.*